IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>    Plaintiff,<br><br>v.<br><br>Boulder Group Inc. and<br>Philip R. Blankstein,<br><br>    Defendants. | Case No: 1:26-cv-02691 |

**COMPLAINT AND JURY DEMAND**

Plaintiff, DAVID GORDON OPPENHEIMER ("Oppenheimer" or "Plaintiff"), by and through his attorneys, ZLATKIN CANN ENTERTAINMENT, for his complaint ("Complaint") against Defendants BOULDER GROUP INC. and PHILIP R. BLANKSTEIN (collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1.  This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of a work registered with the United States Copyright Office, and under the Digital Millennium Copyright Act ("DMCA") for knowing removal and/or alteration of Plaintiff's copyright management information ("CMI"), provision of false CMI, and distribution and/or importing for distribution of false CMI and copies of Plaintiff's work with knowledge that Plaintiff's CMI has been removed and/or altered without authority of Plaintiff, all in violation of 17 U.S.C. § 1202.

**THE PARTIES**

2.  Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3. Defendant BOULDER GROUP INC. ("Boulder Group") was formed on May 1, 1996, as an Illinois corporation and has a principal office to do business in Cook County, Illinois. Upon information and belief, Boulder Group is a boutique investment real estate service firm specializing in single tenant net lease properties.

4. Upon information and belief, Defendant PHILIP R. BLANKSTEIN, also known as Randy Blankstein ("Blankstein"), is an individual residing in Cook County, Illinois, and at all relevant times held an ownership interest in Boulder Group and was the president of Boulder Group.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with this District generally and, in particular, with the events alleged herein, that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, each of the Defendants is domiciled in this District and, upon information and belief, all of the Defendants' actions giving rise to Plaintiff's claims occurred within this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

8. Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

9. Oppenheimer's photographs have appeared in publications including Rolling Stone, MSNBC, MTV, AOL, National Geographic, Fuse TV, and have been displayed at the Museum of the City of New York. The subjects of Plaintiff's photography include Bob Dylan,

Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois.

10. Oppenheimer has, over the years, performed photography services through his own name as well as under the trade name "Performance Impressions." Performance Impressions LLC, which is owned and operated exclusively by Oppenheimer, is a North Carolina limited liability company in good standing.

11. Oppenheimer earns his livelihood from the creation and licensing of his photographs as well as from selling prints of his photographs.

### Oppenheimer Creates, Registers, and Publishes the Photograph

12. In early July 2015, Oppenheimer traveled to Chicago. During this visit, Oppenheimer created an aerial photograph of the Chicago skyline, inclusive of Grant Park, Millennium Park, and Maggie Daley Park ("Photograph") through significant skill and personal expense. Specifically, Oppenheimer chartered a doors-removed helicopter and then captured the Photograph by physically operating professional camera equipment while leaning out of the doors-removed helicopter. This required skill and experience to best capture the aerial perspective.

13. The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph – referenced by its contents title, *Chicago_aerial_skyline_Grant_Parkdsc_1184.jpg* – has its copyright registered with the United States Copyright Office as part of the collection entitled *Chicago Travel and Aerial Photographs Including The Grateful Dead at Soldier Field* under copyright registration number VAu 1-229-868, with an effective date of registration of July 26, 2015. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit 1. The Photograph is

identified by its contents title on page 11 of the certificate. The deposit copy of the Photograph on deposit with the copyright registration is attached hereto as Exhibit 2.

14. After submitting the Photograph for registration, Plaintiff published the Photograph through the Performance Impressions website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the published version of the Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Photograph was published alongside the notice "© 2015 David Oppenheimer" and "All Rights Reserved" and clicking the "Show settings" followed by "Show EXIF" links makes all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph (as published on the Performance Impressions website and on Flickr) is attached as Exhibit 3 hereto bearing this subsequently added CMI on the face of the Photograph.

15. Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

16. Since the date of creation, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to publicly display pursuant to 17 U.S.C. § 106.

17. Plaintiff's copyright in the Photograph is presently valid and subsisting and has been valid and subsisting since the moment of creation and all conditions precedent to the filing of this suit have been satisfied including registration under 17 U.S.C. § 411(a).

### Defendants Use the Photograph Without Authorization

18. Upon information and belief, one or more of the Defendants (or their authorized representatives) obtained the published version of the Photograph, modified the Photograph (including by cropping the Photograph to remove Oppenheimer's CMI, superimposing text and logos in some places on the Photograph, and adding Boulder Group's branding immediately below the cropped Photograph), and incorporated the modified version of the Photograph into at least two brochures promoting investment offerings for the sale of single-tenant net lease real estate properties. Specifically, the modified version of the Photograph was prominently used on the cover page of a Net Lease Investment Offering for a real property located at 520 South State Street in Chicago, Illinois, which was under lease and operated as a franchised CVS Pharmacy (such brochure, "CVS Promotional Brochure"). The modified version of the Photograph was also used on the cover page of a Net Lease Investment Offering for a real property located at 530 South State Street in Chicago, Illinois, which was under lease to the Illinois Media School (such brochure, "IMS Promotional Brochure" and, together with the CVS Promotional Brochure, collectively, "Brochures"). Neither the CVS Promotional Brochure nor the IMS Promotional Brochure contained any commentary or criticism about the Photograph itself. A true and correct copy of the

CVS Promotional Brochure is attached to this Complaint as Exhibit 4. A true and correct copy of the IMS Promotional Brochure is attached to this Complaint as Exhibit 5.

19. Defendants' inclusion of the Photograph into the Brochures caused the reproduction, distribution, and/or display of the modified version of the Photograph through at least the following URLs (collectively, "Infringing URLs"):

- https://bouldergroup.com/media/pdf/CVS-StateSt-Chicago-OM(r).pdf
- https://bouldergroup.com/media/pdf/Illinois-Media-School-Chicago-OM(r).pdf

20. Upon information and belief, one or more of the Defendants (or a third party at the direction of one or more of the Defendants) proceeded to reproduce, distribute, and/or display the Photograph at the Infringing URLs to advertise and market the properties offered for sale through the Defendants. True and correct copies of the screenshots of the displays of the Brochures (inclusive of the Photograph) at the Infringing URLs are attached hereto as Exhibit 6.

21. Upon information and belief, one or more of the Defendants (or a third party at the direction of one or more of the Defendants) also proceeded to reproduce, distribute, and/or display the Photograph as part of both of the Brochures by sending electronic communications containing copies of one or more of the Brochures, as well as creating physical copies of one or more of the Brochures.

**Oppenheimer Provides Notice of Copyright Infringement to Defendants**

22. On April 17, 2025, Oppenheimer contacted Blankstein via email to inform Blankstein of the infringement and included a comprehensive demand letter with details of the infringement.

23. Not having received any response from Blankstein or anyone representing Boulder Group, Oppenheimer again followed up via email on May 11, 2025.

24. Without a response to his prior attempts to contact Blankstein, Oppenheimer sent another follow-up email on May 28, 2025.

25. Oppenheimer did not receive any response to his three prior attempts to contact Blankstein via email, and so, on June 29, 2025, Oppenheimer sent a fourth email to Blankstein regarding the matter, this time copying Boulder Group's Partner Jimmy Goodman, Senior Vice President John Feeney, and Vice President Zach Wright. No one from Boulder Group responded to Oppenheimer's communications.

26. Oppenheimer proceeded to engage counsel, and on or around October 17, 2025, Oppenheimer's counsel sent a notice of retention of litigation counsel to, *inter alia*, Boulder Group via FedEx and via email to Blankstein. On October 20, 2025, such FedEx correspondence was delivered to the address indicated in the records of the Illinois Secretary of State as being both the principal place of business and the registered address of Boulder Group. Such letter was addressed to Blankstein's attention in his capacity as both the registered agent and the president of Boulder Group.

27. As of the date of the filing of this Complaint, to the knowledge of Oppenheimer and Oppenheimer's counsel, no one acting on behalf of Boulder Group has responded to Oppenheimer or Oppenheimer's counsel.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. § 501**
**(Against All Defendants)**

28. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–27 of this Complaint.

29. Plaintiff owns the exclusive rights to the copyright-protected Photograph.

30. Upon information and belief, one or more of the Defendants caused the copying, distribution, and/or display of the Photograph in each of the Brochures and at each of the Infringing URLs.

31. Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

32. Defendants acted with willful disregard of the laws protecting Plaintiff's copyright.

33. Defendants infringed Plaintiff's copyright in the Photograph in violation of 17 U.S.C. § 501.

34. Oppenheimer has been harmed by the infringement in multiple ways. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable. Defendants have benefited from their infringement of the Photograph. Defendants' unauthorized use undermined the Photograph's exclusivity, diminished the Photograph's licensing value, and caused ongoing injury to Oppenheimer's business reputation and professional goodwill by removing attribution and substituting Defendants' branding, thereby impairing Plaintiff's control over the manner and context in which his work is presented to the marketplace. Such loss of control and reputational harm is continuing in nature and not fully compensable through monetary damages alone. Accordingly, Oppenheimer is entitled to injunctive relief, damages, and other relief authorized under the Copyright Act.

35. Upon information and belief, Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from the Photograph.

36. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photograph in an

amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

37. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**Vicarious Copyright Infringement**
**(In the Alternative Against Blankstein)**

38. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this Complaint.

39. At all relevant times, Blankstein was the President of Boulder Group and is expressly identified in the Brochures under the heading "Exclusively Listed By," together with his title, direct telephone number, and email address.

40. Upon information and belief, Blankstein personally participated in, approved, authorized, and/or supervised the preparation and publication of the Brochures containing the Photograph. As the named exclusive listing broker and President of Boulder Group, Blankstein had the right and ability to supervise and control the infringing conduct and possessed a direct financial interest in the marketing and sale of the properties promoted through the Brochures (as well as a direct financial interest in the overall financial performance of Boulder Group). Accordingly, Blankstein is personally liable as a joint infringer and/or vicariously liable for the infringing acts of Boulder Group.

**THIRD CLAIM FOR RELIEF**
**Contributory Copyright Infringement**
**(In the Alternative Against Blankstein)**

41. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this Complaint.

42. Alternatively, Blankstein intentionally induced, encouraged, authorized, and/or materially contributed to the infringements by approving, disseminating, and holding himself out as the exclusive listing broker for the Brochures containing the Photograph.

43. Upon information and belief, as President of Boulder Group, Blankstein at all relevant times was the dominant influence in Boulder Group. Blankstein provided hands-on decision making with respect to the activities of Boulder Group, set and controlled the policies and protocols of Boulder Group, and established corporate rules and cultures which encouraged the infringing activities. Blankstein therefore had actual knowledge of Boulder Group's infringing activities or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same.

44. Accordingly, Blankstein is personally liable to Oppenheimer as a contributory infringer for the infringing activities of Boulder Group.

## FOURTH CLAIM FOR RELIEF
### Violations of the DMCA Under Sections 1202(a) and 1202(b)
### (Against All Defendants)

45. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–27 of this Complaint.

46. Plaintiff's published version of the Photograph contained CMI within the digital file of the Photograph, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notice stating "© 2015 David Oppenheimer" on the Photograph itself. Plaintiff also included CMI in adjacent legible captions where the Photograph was displayed containing a proper notice of copyright, his company's name, and the URL of the Performance Impressions website.

47. Upon information and belief, Defendants (or third parties acting at Defendants' direction) violated the DMCA by intentionally removing and/or altering Oppenheimer's CMI from

the Photograph, and then further violated the DMCA by distributing and/or importing for distribution the Photograph with Oppenheimer's CMI removed and/or altered, with the knowledge or having reasonable grounds to know that Defendants' actions would induce, enable, facilitate, and/or conceal infringement of the Photograph.

48. Upon information and belief, Defendants (or third parties acting at Defendants' direction) further violated the DMCA by knowingly providing false CMI in the form of Boulder Group's logo directly below the Photograph, with the intention of inducing, enabling, facilitating, and/or concealing infringement of the Photograph, and then further violated the DMCA by distributing and/or importing for distribution the Photograph with Boulder Group's false CMI, with the intent of inducing, enabling, facilitating, and/or concealing infringement of the Photograph.

49. Such actions further demonstrate Defendants' willful infringement of the Photograph.

50. The aforesaid actions, including without limitation the distribution and import for distribution of each copy of the Photograph at each of the Infringing URLs and in each copy of the Brochures, whether in digital or physical formats, constitute separate violations of 17 U.S.C. § 1202(a) and 17 U.S.C. § 1202(b). More specifically, the initial creation of the CVS Promotional Brochure as a PDF file involved at least one act of removing and/or altering Oppenheimer's CMI in violation of 17 U.S.C. § 1202(b)(1) and at least one act of providing Boulder Group's false CMI in violation of 17 U.S.C. § 1202(a)(1). Similarly, the initial creation of the IMS Promotional Brochure as a PDF file involved at least one act of removing and/or altering Oppenheimer's CMI in violation of 17 U.S.C. § 1202(b)(1) and at least one act of providing Boulder Group's false CMI in violation of 17 U.S.C. § 1202(a)(1). In addition, each creation (whether in digital or physical

format) of a copy of the CVS Promotional Brochure (inclusive of the modified version of the Photograph) and the IMS Promotional Brochure (inclusive of the modified version of the Photograph) involved a separate distribution and/or import for distribution of a copy of the Photograph without Oppenheimer's CMI in violation of 17 U.S.C. § 1202(b)(3) and of Boulder Group's false CMI in violation of 17 U.S.C. § 1202(a)(2). Without limiting any of the foregoing, each publication of the Brochures at each of the Infringing URLs constitutes a separate distribution of false CMI and a separate distribution of a copy of the Photograph with Oppenheimer's CMI removed and/or altered.

51. Upon information and belief, Defendants knew or had reasonable grounds to know that their omission and/or alteration of Plaintiff's CMI (as well as their provision of Boulder Group's false CMI) would induce, enable, facilitate, and/or conceal infringement of the Photograph. The CMI removed from the Photograph was plainly visible on the face of the published image, embedded within its metadata, and included in accompanying captions identifying Plaintiff as the author and copyright owner. The removal of this visible and embedded attribution, coupled with the addition of Boulder Group's branding, demonstrates deliberate alteration rather than accidental omission and supports a reasonable inference that Defendants acted with knowledge that such removal would conceal infringement.

52. As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff has been and will continue to be harmed in an amount as yet to be determined.

53. As a result of each of the Defendants' actions with regard to the Plaintiff's CMI, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 1203(b)(3) in the form of either actual damages in accordance with 17 U.S.C. § 1203(c)(2) or, upon Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), costs pursuant to 17 U.S.C.

§ 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

54. Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C. § 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

a. Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, or making derivative works of the Photograph;

b. That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photograph;

c. Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from their acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each work infringed as a result of Defendants' acts of copyright infringement, and, in the event that the factfinder determines that either of the Defendants' infringements was not willful, that Defendants be required to pay statutory damages up to $30,000 for each work infringed by the Defendants found to be not willful;

      d.  Pursuant to 17 U.S.C. § 1203(c)(2), that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from any and all of the Defendants' violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

      e.  Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)–(5), Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

      f.  Such other and further relief as the Court shall find just and proper.

Dated: March 10, 2026

                                Respectfully submitted,

                                **ZLATKIN CANN ENTERTAINMENT**

                                By: /s/ *Ilya G. Zlatkin*
                                Ilya G. Zlatkin (ARDC No. 6314344)
                                ZLATKIN CANN ENTERTAINMENT
                                4245 North Knox Avenue
                                Chicago, Illinois 60641
                                Tel: (312) 809-8022
                                Fax: (312) 809-6918
                                ilya@zce.law

                                *Attorneys for Plaintiff David Gordon Oppenheimer*